UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 15-30 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| DAVID CARLISLE | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), filed by the Defendant, David Carlisle ("Carlisle"). Record Document 72. Carlisle also submitted numerous supplements to his original motion, along with a motion for default judgment. Record Documents 75, 76, 77, 78, 81, 82, and 84. The Government opposes Carlisle's motion for release. Record Documents 80 and 86. For the following reasons, Carlisle's motion is granted.

### I.   Background

In 2016, Carlisle was convicted of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841. The statutory range he faced for imprisonment was five to forty years. At sentencing, he was held accountable for between 150 and 500 grams of methamphetamine (actual). Considering the offense level and a criminal history category of V, this Court sentenced Carlisle to 105 months' imprisonment and five years of supervised release. Record Document 69. Carlisle is currently housed in the custody of the Bureau of Prisons ("BOP") at FCI Allenwood

Medium.  His projected release date is September 6, 2021.  Federal Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last visited November 23, 2020).

Due to the coronavirus and his own medical conditions (Type II diabetes and high cholesterol),[1] Carlisle requests a reduction of his term of imprisonment to a sentence of time-served.  The World Health Organization and the Centers for Disease Control and Prevention ("CDC") have declared a global pandemic related to the spread of the COVID-19 virus, a strand of the novel coronavirus. The CDC has advised that persons over the age of sixty-five and those with certain underlying medical conditions are considered high risk and are particularly susceptible to contracting the virus.  In light of this pandemic, the President of the United States declared a national emergency.  The CDC and all health authorities have strenuously recommended social distancing as a means of limiting community spread of the virus.

The prison population is particularly at risk due to the conditions of confinement, the close contact of inmates, and the inability to maintain social distancing.  Responding to this concern, Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") "expand[s] the cohort of inmates who can be considered for home release."  Pursuant to that provision of the CARES Act, United States Attorney General William Barr issued memoranda to the BOP regarding criteria to be considered, including

---

[1] According to the presentence report ("PSR"), Carlisle had no diagnosed medical conditions at the time of sentencing.  Record Document 66, p. 12.

inmates presenting high risk factors for the disease, to maximize the transfer to home confinement for all eligible inmates.

In this case, Carlisle is forty-five years old and suffers from Type II diabetes with diabetic neuropathy and high cholesterol.[2] He initially requested release from the warden of FCI Allenwood Medium, but his request was denied because he presents a medium risk of recidivism.[3] Record Document 76-1, p. 1. Carlisle submits that his medical conditions place him at high risk for contracting or becoming severely ill from COVID-19 and thus constitute extraordinary and compelling reasons to warrant his release from BOP. He asks that his sentence be modified to a sentence of time-served. In response, the United States concedes that Carlisle has exhausted his administrative remedies within the prison, such that this Court can consider the instant request. It further acknowledges that Carlisle's diabetes constitutes extraordinary and compelling reasons to warrant his release, but it argues that Carlisle otherwise poses a danger to the community and, as such, should not be released.

---

[2] Carlisle's filing of this motion is deemed a limited waiver of his right to confidentiality in his medical records.

[3] According to the BOP, in determining eligibility for release, "priority" is given to offenders with a minimum risk of recidivism. Record Document 76-1, p. 1. However, BOP policy does not state that medium risk offenders, like Carlisle, are *ineligible* for release. The Court further notes that an offender's security level is taken into consideration, with priority given to those inmates in low or minimum security facilities. Id. While Carlisle is housed in a medium security facility, this security level was not included as a basis for the warden's denial of his request for release. Id. at 2.

## II. Law and Analysis.

### A. Exhaustion of Remedies

Here, Carlisle seeks compassionate release per 18 U.S.C. § 3582(c)(1)(A)(i).[4] This allows for the modification of a term of imprisonment upon a finding that certain extraordinary and compelling reasons warrant a reduction in an inmate's sentence. As amended by the First Step Act in December of 2018, the compassionate release provision provides:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
>   (1) in any case—
>
>   (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all

---

[4] It is important to distinguish between the CARES Act, on the one hand, and § 3582 as amended by the First Step Act on the other.  The CARES Act was the federal government's comprehensive response to the COVID-19 crisis and certain provisions addressed the release of eligible inmates in the prison population.  The CARES Act expanded the BOP's authority under 18 U.S.C. § 3624(c)(2) to release prisoners from custody to home confinement.

Section 3624(c)(2) authorizes the BOP to "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph." 18 U.S.C. § 3624(c)(2). The CARES Act, in turn, provides that if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, as he did on April 3, 2020, the BOP Director may increase the maximum amount of time that a prisoner may spend in home confinement.  Thus, home confinement determinations rest with the BOP.

In this case, Carlisle seeks judicial relief under 18 U.S.C. § 3582, which permits the district court to reduce a prisoner's term of imprisonment under certain circumstances.  Thus, the statute applicable to the Court's analysis here is § 3582, not the CARES Act and its expansion of § 3624(c)(2).

> administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction . . .
>>
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Although sentence reductions under § 3582 historically could be ordered only upon a motion by the Director of the BOP, the First Step Act of 2018 amended the statute to allow prisoners to petition the district courts as set forth above. However, as the statute makes plain, prior to filing a motion for release in the district court, a prisoner must first exhaust his administrative remedies either by fully exhausting administrative appeals of the BOP's decision not to file a motion for compassionate release on his behalf, or by filing the motion with the court after a lapse of 30 days from the date of the warden's receipt of his request for release, "whichever is earlier." 18 U.S.C. § 3852(c)(1)(A). The Fifth Circuit has made it clear that this is a mandatory claim-processing rule that must be

5

enforced if the United States raises it in the district court.  United States v. Franco, 973 F.3d 465, 468 (5th Cir. 2020).

Here, the exhaustion requirement has been satisfied.  Carlisle filed his request with the warden on June 10, 2020, and the BOP denied his request for release.  Record Document 76-1, pp. 3-4.  As such, the Court has the authority to address the merits of Carlisle's request to modify his sentence under § 3582 and will turn to that inquiry now.

      B.      Extraordinary and Compelling Reasons

Subject to consideration of the § 3553(a) factors, section 3582(c)(1)(A) permits a reduction in Carlisle's term of imprisonment if the Court determines that extraordinary and compelling reasons warrant a reduction.  The reduction, however, must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).  28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

Turning to the Guidelines, U.S.S.G. § 1B1.13, Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A), explains that a reduction is authorized when the court determines that extraordinary and compelling reasons exist and the defendant is not a

danger to the safety of any other person or the community.[5]  Under § 1B1.13 Application Note 1, the following are deemed extraordinary and compelling reasons: (1) defendant's medical condition;[6] (2) defendant's age;[7] (3) family circumstances;[8] or (4) other reasons. U.S.S.G. § 1B1.13, cmt. n.1.  "Other reasons" is a catchall category defined as "extraordinary and compelling reasons other than, or in combination with" medical condition, age, or family circumstances as "determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13, cmt. n.1(D).

Here, Carlisle submits that he is entitled to compassionate release due to his preexisting medical conditions, that is his Type II diabetes and high cholesterol.  The

---

[5] "[T]he Sentencing Commission's policy statements have not been amended since the enactment of the First Step Act and, consequently, a portion of the policy statement now squarely contradicts 18 U.S.C. § 3582(c)(1)(A) as amended. The relevant policy statement continues to plainly provide that a term of imprisonment may be reduced only upon a motion by the Director of the BOP upon a finding of extraordinary circumstances warranting a sentence reduction and a determination that the defendant is not a danger to the safety of any person or the community at large. . . . [D]istrict courts have found that they have discretion to determine what constitutes 'extraordinary and compelling reasons' on a case by case basis, and reliance on the policy statement may be helpful, but not dispositive." United States v. Mazur, 457 F. Supp. 3d 559, 561 (E.D. La. May 4, 2020).

[6] The defendant must be suffering from a terminal illness, or (1) a serious physical or medical condition, (2) a serious functional or cognitive impairment, or (3) deteriorating physical or mental health because of the aging process, which substantially diminishes the defendant's ability to provide self-care in the prison environment and from which the defendant is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A).

[7] Defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his term of imprisonment, whichever is less. U.S.S.G. § 1B1.13, cmt. n.1(B).

[8] Family circumstances requires the death or incapacitation of the caregiver of the defendant's minor child or children or the incapacitation of the defendant's spouse or registered partner where the defendant is the only available caregiver for him or her. U.S.S.G. § 1B1.13, cmt. n.1(C).

current CDC guidelines report that Type II diabetes presents an increased risk of severe illness from COVID-19. See Ctr. for Disease Control and Prevention, *People With Certain Medical Conditions,* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Nov. 23, 2020).  High cholesterol is not similarly identified as a specific risk factor.  Generally, diabetes can be controlled adequately with medication and proper medical treatment and does not ordinarily present an obstacle to an inmate's ability to provide self-care in the prison.  However, within the context of the coronavirus pandemic, the Government acknowledges that Carlisle's diabetes presents a risk factor identified by the CDC as increasing his risk for serious illness or death.  Record Document 80, p. 9. The Government

> agrees that this chronic condition presents "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" . . . in that at this time, his ability to provide self-care against serious injury or death as a result of COVID-19 is substantially diminished within the environment of a correctional facility by the chronic condition itself.

Id.  The Government further asserts that because Carlisle "meets the threshold test of a medical condition defined in note 1(A), this Court need not consider whether the defendant's condition falls under the 'catch-all' provision of note 1(D)." Id., n.4.

As an initial matter, it is not patently clear to the Court that Carlisle's diabetes substantially diminishes his ability to provide self-care within the prison.  To the contrary, the medical records submitted by Carlisle indicate he has received prompt attention for

his medical issues whenever a concern has arisen. And, bolstering the Court's impression are the BOP's own records which state that although Carlisle suffers "from a chronic or serious medical condition which is an incurable disease," he is "not disabled or unable to perform activities of daily living." Record Document 76-1, p. 3. Indeed, Carlisle is classified as a "Level 2" care category inmate, indicating he has medical conditions which can generally be managed with clinical intervention. Elsewhere, BOP's records state that Carlisle "maintains his physical well-being through health promotion and disease prevention strategies such as routine medical care, regular exercise, and an appropriate diet." Id. at p. 8. Thus, absent the Government's representations to the contrary, the Court would have been inclined to find that Carlisle's diabetes can be well-managed within the prison environment, even with the risks of COVID-19.

Aside from Carlisle's own medical condition, an additional factor the Court must consider is the condition of the facility in which he is housed. Allenwood BOP is comprised of four facilities. The BOP's website shows that Carlisle's facility, FCI Allenwood Medium, currently has eighty-nine inmate cases and six staff cases. Federal Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus (last visited Dec. 1, 2020). Meanwhile, USP Allenwood has 125 inmate and 8 staff cases. See id. The Court understands each BOP facility is battling the pandemic the best it can with the resources it has available. The Court also recognizes that the BOP has made "extensive and professional efforts to curtail the virus's spread," see United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020), and that its operational procedures have been modified to combat

9

any further spread. Nonetheless, the spread of the virus is understandably concerning for all of the inmate population, especially for those high-risk individuals like Carlisle.

The Court stresses that the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Merely being at higher risk for serious complications from COVID-19 is not, by itself, ordinarily sufficient for the Court to find the requisite extraordinary and compelling reasons for compassionate release. That is, not every prisoner at higher risk for serious complications from COVID-19 is entitled to immediate release from incarceration. However, based <u>solely</u> upon the Government's concession in this case, the Court will proceed as though Carlisle has satisfied his burden of establishing an extraordinary and compelling reason warranting compassionate release.

C. Consideration of Statutory Factors

The Court must now determine whether Carlisle presents a danger to the "safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). This is where the Government objects to his release. Section 3142(g) requires the Court to consider factors such as the nature and circumstances of the charged offense, the history and characteristics of the defendant, and the nature and seriousness of the danger to any person or the community at large that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

Regarding the nature and circumstances of the charged offense, as set forth above, Carlisle possessed and intended to distribute a large amount of

methamphetamine. This is plainly a very serious offense. However, his crime involved no weapons, and he engaged in no violence. Further, as he notes in his motion to the Court, Carlisle cooperated extensively with law enforcement officials.[9]

As to the history and characteristics of the defendant, the PSR undeniably reflects a troubled criminal history. Carlisle has a number of drug convictions, primarily related to marijuana. Of the ten criminal history points calculated for purposes of the PSR, seven points originated from four drug-related convictions: (1) possession of cocaine in 1999;[10] (2) possession of marijuana in 2006; (3) possession of marijuana in 2009; and (4) delivery of marijuana in 2011. Record Document 66, pp. 7-8. Again, those four convictions account for seven of his ten criminal history points. In addition, in 1995, he was convicted of assault- family violence, resulting from a battery he committed upon his spouse; for this, he received one criminal history point. Id. at 7. Finally, in 2012, he was convicted of failure to identify himself to law enforcement, resulting in two criminal history points. Id. at 7-8.

It is clear that Carlisle has struggled with a significant drug addiction, which the Court does not intend to minimize. But the Court must also acknowledge that the majority of Carlisle's criminal history score emanates from that problem. Further, aside from the

---

[9] See Record Document 76, p. 2.

[10] This was a federal conviction, and by far, represents the most serious sentence of incarceration Carlisle ever faced until the instant case. He was sentenced to seventy months' imprisonment. It is the Court's understanding that Carlisle completed the Residential Drug Abuse Program during this term of imprisonment.

11

domestic violence conviction in 2005—a decade prior to the instant conviction— Carlisle's convictions are nonviolent.

Carlisle's conduct in prison is illustrative of his rehabilitative efforts and demonstrative of his desire to spend his time productively. BOP's documentation reveals that he

> demonstrates that he is self-sufficient and has worked to develop useful abilities in order to acquire and maintain post incarceration employment. He is currently assigned as a Unit Orderly where he receives favorable work reports from his Detail Supervisor. His responsibilities [are] to clean the floors, showers, rails, doors, windows, take out trash, and keep the sanitation level up to par. He will need to secure employment upon his transfer to an RRC to assist with his transition back into the community.

Record Document 76-1, p. 6. Although Carlisle has been written up three times—once for possession of drugs/alcohol/possession of a non-hazardous tool, and twice for refusing a work assignment—BOP reports that "he is not considered a management problem," despite these infractions. Id. at 7.

The Court now addresses the danger Carlisle would present to the community if released. While in prison, Carlisle has participated in the Residential Drug Abuse Program ("RDAP"). RDAP, by statute, authorizes a qualifying inmate's custodial sentence to be reduced by up to one year after successful completion of the program. See 18 U.S.C. § 3621(e). Based on Carlisle's participation in the RDAP program, the BOP originally designated him to be released to a halfway house on December 7, 2020. Record Document 76-1, p. 11. However, it is the Court's understanding from the parties that due to coronavirus, the RDAP program has been indefinitely suspended and thus Carlisle

has been unable to complete it. The Government represents that because Carlisle has not yet satisfied the requirements for completion of the program, his December 7, 2020 "release date will actually be adjusted to a later date to allow Defendant to successfully complete" the program. Record Document 86, p. 1.

The Court finds the fact that Carlisle is set to be released in less than one year, and within a few months if he can complete the RDAP program, is a powerful indication of Carlisle's readiness to be reintroduced to society. Aside from the very criminal history the Court reviewed for sentencing this Defendant and which it has again considered in the context of this motion, the Government has presented no additional facts or grounds that would suggest Carlisle poses a danger to the community. Indeed, all the Government argues is that Carlisle "has an admitted and documented substance abuse problem [and] is a danger to himself and the community without successful completion of the RDAP Program." Id. at p. 2. This conclusory statement is unpersuasive in light of the facts of this case, Carlisle's record in prison, and his approaching release date. The Court finds that the danger Carlisle presents to the community is minimal and concludes that overall, the § 3142(g) factors favor Carlisle's release.

The Court must next consider the 18 U.S.C. § 3553(a) factors, including (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further

crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the offense; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution. 18 U.S.C. § 3553(a). In the context of compassionate release motions, other courts are also considering the risk of recidivism the defendant poses, the time remaining on his sentence, the quality of his release plan, and the impact of the BOP's efforts to maintain the safety of inmates. Many of these factors have already been considered by the Court and need not be repeated here.

Carlisle entered federal custody on February 5, 2015. He has served seventy months—or two-thirds—of his sentence. With good time credits, the BOP's projected release date is less than ten months from now. The significant time he has already served in prison has achieved much of the original sentence's purpose in terms of reflecting the seriousness of the offense, promoting respect for the law, providing just punishment, and providing a deterrent effect. A reduction in Carlisle's sentence will not override the punishment he has already been subjected to, nor will it eradicate the effects of the Court's original sentence.

By reducing Carlisle's sentence, the Court does not condone or minimize the seriousness of his conduct. However, based upon the unique facts of this case, a sentence of time served would provide just punishment for his offense. Incarcerating

him any longer likely serves no meaningful retributive purpose. This is especially so given that Carlisle will be released by the BOP in less than one year regardless of any action taken by the Court.

The Court recognizes the possibility of sentencing disparities. However, to the extent a disparity would be created, the Court must adhere to the independent nature of a review for compassionate release. Hence, while the Court strives not to create unwarranted sentencing disparities, it is nonetheless obligated to independently evaluate each case presented to it for consideration.

In sum, Carlisle has a significant criminal history involving nonviolent drug possession and drug trafficking offenses. He has exhibited commendable behavior while in prison, as reflected by the BOP records. He has paid his special assessment, has maintained employment within the prison, has positive reviews from staff, and has not been a problem for prison authorities. While he has been unable to complete the RDAP program, which is helpful for successful reintegration into society, this does not mean that Carlisle has not made significant strides in obtaining substance abuse counseling. Indeed, he has taken drug programming classes while in the BOP, has taken full advantage of other educational programming opportunities, and has continued to engage positively with prison staff and fellow inmates throughout his sentence. On balance, considering the Court's familiarity with all relevant facts of this case, the Court finds the § 3553(a) factors support Carlisle's request for compassionate release. Carlisle can be released to his parents' home, where he will undergo a fourteen-day quarantine.

## III. Conclusion

For the foregoing reasons, Carlisle's motion for compassionate release [Record Document 72] be and is hereby **GRANTED**, while his motion for default judgment [Record Document 81] is **DENIED AS MOOT**. Carlisle's sentence is reduced to a sentence of **time-served** subject to the following conditions:

1. Carlisle's original term of supervised release of five years and all original conditions thereof [Record Document 69] are not affected by this ruling.

2. Execution of the Court's order is **STAYED** until **December 21, 2020** to allow the Bureau of Prisons and the United States Probation Office the opportunity to make arrangements for Carlisle's release.

3. An amended judgment will be entered separately to reflect the amended sentence and to set forth all conditions of supervision that will apply to Carlisle.

4. The Clerk of Court shall provide a copy of this ruling to the Probation Office and FCI Allenwood Medium.

**THUS DONE AND SIGNED** this 7th day of December, 2020.

_____
ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE